**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

October 1, 2020

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Honorable Edgardo Ramos
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re:**   *Clinton Richardson v. Atlas Builders LLC, et al.*
        **Civil Action No. 20 Civ. 05756 (ER)**

Dear Judge Ramos:

This firm represents plaintiff Clinton Richardson ("Richardson" or "Plaintiff") with respect to his claims for unpaid overtime premiums and for failure to provide proper wage notices and wage statements against Atlas Builders LLC, Michael Yusim and Alexander Alexandrov (collectively, the "Defendants"). We write, with the consent of counsel for Defendants, seeking the Court's approval of the parties' settlement, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). We respectfully submit that the attached negotiated Settlement Agreement and Wage and Hour Release ("Settlement Agreement") (**Exhibit A**)[1] constitutes a fair and reasonable compromise of this matter, which should be approved by the Court.

**I.   Procedural History and Plaintiff's Allegations**

The Plaintiff commenced this action by filing a Class & Collective Action Complaint in the Southern District of New York on July 24, 2020 against Defendants. (Dkt. No. 1). A copy of the Summons and Complaint was served on defendant Atlas Builders LLC via the Secretary of State on August 11, 2020 and on defendants Yusim and Alexandrov on August 10, 2020 and on August 11, 2020, respectively. On August 16, 2020, Plaintiff informed undersigned counsel that Alexandrov had contacted him for the purpose of reaching a settlement agreement with respect to the allegations presented in his Complaint. Accordingly, with the Plaintiff's authority, Plaintiff's counsel contacted Alexandrov on August 17, 2020 and August 18, 2020 to initiate discussions about an individual settlement agreement. Plaintiff's counsel communicated to Alexandrov that, to the extent Defendants were not represented by counsel, Plaintiff's counsel could discuss a potential resolution directly or await a response from Defendants' counsel. The parties engaged in

---

[1] The parties respectfully make note that the attached Settlement Agreement has not been fully executed but the parties expect to submit a fully-executed copy on October 2, 2020.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

settlement negotiations regarding the allegations presented in the Complaint and Defendants' potential defenses, as well as an approximate calculation of damages.

At the conclusion of the second telephone conversation between Plaintiff's counsel and defendant Alexandrov, the parties agreed to settle Plaintiff's claims for $30,000.00, with the understanding that Defendants' counsel would follow up to discuss the remaining settlement terms, including an initial payment amount and potential payment plan. On August 21, 2020, counsel for Defendants informed undersigned counsel that he would be representing Defendants, and since then the parties have continued to engage in good-faith negotiations to reach a complete settlement agreement.

On September 2, 2020, counsel for Defendants, with the consent of Plaintiff, requested an extension of time to file an Answer to the Complaint and informed the Court that the parties had reached a settlement in principle and anticipated filing the settlement agreement for approval on or before October 1, 2010, which the court granted on the same date. (Dkt. Nos. 10, 11).

## II.     The Settlement Accounts for Litigation Risk

Although the parties hold significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability, the parties have agreed to a settlement amount of $30,000.00 for the Plaintiff. The parties dispute the Plaintiff's actual employment period, the number of hours worked, and the consistency of Defendants' pay practices for other similarly situated employees. With respect to the Plaintiff, Defendants have exchanged a W-4 allegedly signed by him at the time of his hiring. For purposes of this settlement, Plaintiff has accepted the information contained in the W-4 as true, including that his initial start date being on or around November 15, 2016, and not in 2014 as alleged in the Complaint. Plaintiff further alleges that throughout his employment, he generally worked from Monday through Friday from approximately 7:00 a.m. to 3:00 p.m. but often as late as 7:00 p.m., depending on which specific project he was assigned. Plaintiff further alleges he was also required to work on Saturdays and Sundays from approximately 7:00 a.m. to approximately 3:00 p.m. Plaintiff claims that he typically worked a total of between forty (40) and fifty-four (54) hours per week, and further alleges he was, at times, required to work longer, depending on the demand for the specific project. Specifically, for the portion of his employment at a facility for mentally disabled patients in Coney Island and at a project site in Harlem, Plaintiff alleges having worked up to seven (7) days per week and sometimes up to twelve (12) hour shifts per day, for a total of approximately eighty-four (84) hours per week.

Throughout his employment period, Plaintiff alleges he received a flat hourly rate for all hours worked, including those in excess of forty (40) hours. Plaintiff claims his hourly rate increased periodically throughout his employment from approximately seventeen dollars and fifty cents ($17.50) up to approximately twenty ($20.00) dollars. It is Plaintiff's position that during certain workweeks when he worked in excess of forty (40) hours, he would receive an additional amount listed in his paystub as a "bonus" payment, which was calculated at Plaintiff's regular straight-time rate. Plaintiff also alleges that although Plaintiff received his wages by corporate

check along with a paystub, his paystub did not account for all of his hours worked, since he would often be missing hours from his pay.

In furtherance of the settlement negotiations, Plaintiff's counsel calculated estimated damages for Plaintiff based on his allegations regarding the hours he worked and the wages he received from Defendants for such work. The damages analysis covers the period between November 15, 2016, the date listed on Defendants' exchanged W-4, and Plaintiff's best recollection of his end date on or about September 17, 2018. Plaintiff's final damages analysis resulted in a total of approximately $6,405.00 in "actual" unpaid wage damages. In total, Plaintiff's calculated a damages sum of $24,505.39, which includes Plaintiff's damages for unpaid overtime, wage notice and wage statement violations, as well as liquidated damages under the FLSA and NYLL, and statutory interest on his NYLL claims at 9% per annum.

Plaintiff prefers to settle now for an amount that permits him to recover approximately 100% of his total actual damages and which he would be guaranteed to receive under the terms of the settlement, rather than proceed with extensive and costly litigation with an unknown outcome.

Defendants dispute all allegations set forth in the Complaint and herein, and expressly deny any wrongdoing or that Plaintiff's claims/allegations are similar to any other current or former employee of Defendants. Further, Defendants agreed to reach a settlement in this matter to avoid the expense, time, and aggravation of a long-drawn out litigation.

### III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of **$30,000.00** (the "Settlement Amount"). Of that amount, **$10,957.44** is payable to Plaintiff's counsel (including **$1,436.30** in expense reimbursements and **$9,521.14** in attorneys' fees). The remaining **$19,042.56** is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiff signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Settlement Agreement making it clear that nothing in the Settlement Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The Settlement Agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria*

*LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds both Parties. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the Settlement Agreement and to obtain reasonable attorneys' fees in the event that they prevail.

**IV.    Plaintiff's Attorney's Fees and Expenses**

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (**Exhibit B**), as of October, 1, 2020, Plaintiff's counsel has spent more than 25 hours in prosecuting and settling this matter, resulting in a lodestar of **$8,289.21**. Plaintiff's counsel has spent **$1,436.30** in actual litigation costs from filing and serving the complaint. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $9,521.14) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest **1.15** multiplier of the lodestar

and is consistent with what was agreed upon between the Plaintiff and his counsel in his retainer agreement. Specifically, the retainer agreement between Plaintiff and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Although the applicable rates are those approved in the SDNY, the prevailing rates in the EDNY are similar, if not lower than those typically approved in the SDNY. *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases," citing cases); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'") (internal citations omitted). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food*, 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiff's claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations, consisting of several communications and exchanges between the parties during which the parties discussed the merits of Plaintiff's allegations and the defenses thereto. Additionally, the Plaintiff is a former employee of Defendants so the fear of possible coercion is not at issue here. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to prevail on his FLSA claims in this litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*       *       *       *       *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiff and we respectfully request that the Court approve the Settlement Agreement.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Brent E. Pelton*

Brent E. Pelton, Esq. of
PELTON GRAHAM LLC

Enclosure

cc:     All counsel (via CM/ECF)